**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**Charleston Division**

| | |
|---|---|
| JOHN DOE, a minor, by his parents and next friends, JIM DOE and JANE DOE; and the ALLIANCE FOR FULL ACCEPTANCE, <br><br>                 Plaintiffs, <br><br>     v. <br><br> STATE OF SOUTH CAROLINA; SOUTH CAROLINA STATE BOARD OF EDUCATION; SOUTH CAROLINA DEPARTMENT OF EDUCATION; BERKELEY COUNTY SCHOOL DISTRICT; ELLEN WEAVER, in her official capacity as South Carolina Superintendent of Education; ANTHONY DIXON, in his official capacity as Superintendent of Berkeley County School District, <br><br>                 Defendants. | No. _____ <br><br> **CLASS ACTION COMPLAINT** |

## INTRODUCTION

1.      In 2020, the U.S. Court of Appeals for the Fourth Circuit held that, when a school forbids transgender students from using restrooms consistent with their gender identities, the school violates Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Nonetheless, the South Carolina legislature included in its most recent budget a measure—Proviso 1.120—that requires schools to do exactly that. As a result, with the start of the new school year, transgender students, including John Doe, face grave violations of their civil and constitutional rights.

2.      Proviso 1.120's application to school restrooms is unlawful, and so are school policies that follow it rather than established federal law. Plaintiffs John Doe, a minor, by his

parents and next friends, Jim Doe and Jane Doe, and the Alliance for Full Acceptance, a South Carolina advocacy organization, bring this civil rights action against the responsible state and local government entities and officials under Title IX and the Equal Protection Clause.

## PARTIES

3.      Plaintiff John Doe is a thirteen-year-old boy. He resides in Berkeley County, South Carolina. Plaintiff brings this action through his parents and next friends, Jim Doe and Jill Doe.[1]

4.      The Alliance for Full Acceptance ("AFFA") is a social justice organization based in North Charleston, South Carolina. Its mission is to achieve, nurture, and defend equality and full acceptance for lesbian, gay, bisexual, transgender, and queer ("LGBTQ+") people.

5.      Defendant State of South Carolina (the "State") oversees and operates the South Carolina Board of Education and the South Carolina Department of Education, and it employs the State Superintendent of Education. The State's capital is in Columbia, South Carolina. The State receives federal financial assistance in the form of grants from the U.S. Department of Education, among other federal agencies.

6.      Defendant South Carolina State Board of Education (the "State Board") oversees the State system of public education and adopts policies, rules, and regulations that govern the

---

[1] As set forth in the forthcoming motion to proceed pseudonymously, Plaintiff John Doe and his parents seeks to proceed pseudonymously because John is a minor, and because disclosure of their identities "would reveal matters of a highly sensitive and personal nature," including John's "transgender status." *Foster v. Andersen*, No. 18-2552-DDC-KGG, 2019 WL 329548, at *2 (D. Kan. Jan. 25, 2019); *see also, e.g.*, *Poe v. Drummond*, No. 23-CV-177-JFH-SH, 2023 WL 4560820, at *5 (N.D. Okla. July 17, 2023) (granting motion to proceed under pseudonyms to five transgender adolescent plaintiffs and their parents in challenge to ban on gender affirming medical care); *Hersom v. Crouch*, 2:21-CV-00450, 2022 WL 908503, at *2 (S.D.W. Va. Mar. 28, 2022) (allowing a plaintiff to proceed pseudonymously because of the stigma associated with the plaintiff's transgender identity).

State's public schools. S.C. Code § 59-5-65. The Board is located in Lexington County, South Carolina.

7.       The South Carolina Department of Education (the "Department") administers the State public education system under the direction of the State Superintendent of Education. It implements statewide educational policy and manages public school funds provided by the State and federal governments. S.C. Code § 59-3-30. Proviso 1.120 requires the Department to enforce the law by withholding state funds from school districts that violate it. The Department is located in Lexington County, South Carolina. It is a recipient of federal financial assistance in the form of grants from the U.S. Department of Education.

8.       Ellen Weaver is the State Superintendent of Education. She is the chief administrative officer of the State's public education system and the chief executive officer of the Department. S.C. Const. art. XI, § 2; S.C. Code § 59-3-30. As an executive officer under the State Constitution, S.C. Code § 1-1-110, she is charged with ensuring that State laws related to education, including Proviso 1.120, are "carrie[d] into effect," *State ex rel. McLeod v. McInnis*, 278 S.C. 307, 312 (1982). Proviso 1.120 requires her to enforce the law through the Department by withholding state funds from school districts who violate it. She executes her official duties in Lexington County, South Carolina. Defendant Weaver is sued in her official capacity.

9.       Berkeley County School District (the "School District") is the corporate body that governs and operates Berkeley County public schools, including Cane Bay Middle School. It is located in Berkeley County, South Carolina. It receives federal financial assistance.

10.      Dr. Anthony Dixon is the Superintendent of Berkeley County School District. He is the chief administrative officer of Berkeley County School District and the chief executive officer of its board of trustees. He is responsible for executing State education laws and policies in

the school district under the supervision of the State Superintendent of Education. *See* S.C. Const. art. XI, § 2; *see also* S.C. Code § 59-3-30 (charging the State Superintendent to "[h]ave general supervision over and management of all public school funds" and to "[a]dminister, through the State Department of Education, all policies and procedures adopted by the State Board of Education"). Defendant Dixon executes his official duties in Berkeley County, South Carolina. Defendant Dixon is sued in his official capacity.

11.      Collectively, the State, the State Board, the Department, and Berkeley County School District are the "Institutional Defendants." Ellen Weaver, in her official capacity as the State Superintendent of Education, and Dr. Anthony Dixon, in his official capacity as the Superintendent of Berkeley County School District, are the "Individual Defendants."

## JURISDICTION AND VENUE

12.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343(a)(3). This Court is authorized to order declaratory relief under 28 U.S.C. §§ 2201 and 2202.

13.      Venue is proper in the District of South Carolina under 28 U.S.C. § 1391(b) because the claims arose in the District, all parties reside in the District, and all the events giving rise to this action occurred in the District.

14.      Venue is proper in the Charleston Division under Local Civil Rule 3.01 because that is where all Plaintiffs are located and where a substantial portion of the events giving rise to the claims occurred and are occurring.

## FACTS

### PROVISO 1.120

15.      In 2020, the U.S. Court of Appeals for the Fourth Circuit decided *Grimm v. Gloucester County School Board,* a Title IX and Equal Protection case brought by a transgender

4

boy, Gavin Grimm, whose Virginia school forbade him from using the boys' restroom. 972 F.3d 586 (4th Cir. 2020).

16.     *Grimm* held that, if a school bans transgender students from restrooms that correspond to their gender identity, it violates both Title IX and the Equal Protection Clause of the U.S. Constitution. *See id.* at 606-19.

17.     *Grimm* also recognized that, when transgender students are excluded from restrooms that correspond to their gender identity, they experience significant harms. These include medical complications, such as urinary tract infections, missed class time, and significant emotional, psychological, and dignitary interests. *See id.* at 617-18

18.     The South Carolina legislature knew this. Yet, over the summer, it openly flouted federal law by including in its budget Proviso 1.120, which requires schools, at the threat of lost state funding, to exclude transgender students from restrooms that correspond to their gender identities.

19.     Proviso 1.120 reads, in relevant part:

"Sex" means a person's biological sex, either male or female, as objectively determined by anatomy and genetics existing at the time of birth. Evidence of a person's biological sex includes, but is not limited to, any government-issued identification document that accurately reflects a person's sex as listed on the person's original birth certificate issued at or near the time of birth. . . .

A school district supported in part by funds appropriated by this act, shall not permit any public school within the district to use any funds to maintain or operate any restroom or changing facility on its premises that is not in compliance with this provision or facilitate any public-school authorized activity or event involving overnight lodging that is not in compliance with this provision. A school district that violates any portion of this provision shall be penalized twenty-five percent of the funds appropriated by this act that are used to support the school district's operations. . . .

Multi-occupancy public school restrooms and changing facilities shall be designated for use only by members of one sex. Any public school restrooms and changing facilities that are designated for one sex shall be used only by members

of that sex; no person shall enter a restroom or changing facility that is designated for one sex unless he or she is a member of that sex; and the public school with authority over that building shall take reasonable steps to ensure that all restrooms and changing facilities provide its users with privacy from members of the opposite sex.

20.     South Carolina's efforts to exclude transgender students from appropriate restrooms, in defiance of federal law, began last year.

21.     On November 16, 2023, a group of South Carolina state representatives, led by Representative April Cromer, "prefiled" House Bill 4538, the "South Carolina Student Physical Privacy Act," by circulating the bill to legislators before the official start of the 2024 legislative session.

22.     The purpose of House Bill 4538 was to require schools to exclude transgender students from restrooms and other facilities that correspond to their gender identities, in direct conflict with *Grimm*. House Bill 4538 sought to accomplish this goal by providing, in relevant part, that "every public school restroom and changing facility that is accessible by multiple persons must be designated for use only by members of one sex," and defining "sex" as "a person's biological sex as objectively determined by anatomy and genetics existing at the time of birth."

23.     In advocating for House Bill 4538, several of the bill's sponsors publicly explained its purpose and intended impact on South Carolina public school students.

24.     For instance, Representative April Cromer, one of the bill's sponsors, described the bill as "common sense legislation – boys are boys, girls are girls, and you have to use the bathroom and locker room that lines up with your gender."

25.     Representative Melissa Oremus, another co-sponsor of the bill, explained, "We have lost our way when we start catering to a crazy instead of protecting the innocence of our children. The left is all about safe spaces; well, a bathroom should be one of them."

26.    On January 9, 2024, South Carolina House leadership formally introduced House Bill 4538 on the first day of the 2024 legislative session and referred it to the Committee on Judiciary. H. 4538, 125th Gen. Assemb. (S.C. 2024). The bill did not make it out of the committee.

27.    On March 27, 2024, South Carolina State Senators Wes Climer and Josh Kimbrell introduced Senate Bill 1213, also titled the "South Carolina Student Physical Privacy Act." S. 1213, 125th Gen. Assemb. (S.C. 2024). Senate Bill 1213 was identical to House Bill 4538. South Carolina Senate leadership referred Senate Bill 1213 to the Committee on Education. The bill did not make it out of the committee.

28.    On April 16, 2024, a group of South Carolina state representatives, led by Representative Heath Sessions, introduced House Bill 5407, the third bill in the 2023-24 legislative session to be titled the "South Carolina Student Physical Privacy Act." H. 5407, 125th Gen. Assemb. (S.C. 2024). House Bill 5407 was substantially similar to House Bill 4538 and Senate Bill 1213. Like those prior bills, House Bill 5407 mandated that schools prohibit transgender students from using restrooms and other facilities that correspond with their gender identities. South Carolina House leadership referred House Bill 4507 to the Committee on Judiciary. The bill did not make it out of the committee.

29.    After their three unsuccessful attempts to violate federal law via permanent legislation, South Carolina state legislators instead resorted to slipping similar language into the state's annual budget appropriations bill.

30.    On April 24, 2024, South Carolina State Senators Wes Climer and Josh Kimbrell—the co-sponsors of Senate Bill 1213—introduced what was originally called Amendment 48, and what is now known as Proviso 1.120, to House Bill 5100, the state's annual budget appropriations bill. *See* S. Journal No. 62, 125th Session (S.C. Apr. 24, 2024), https://www.scstatehouse.gov/

sess125_2023-2024/sj24/20240424.htm#p11. Proviso 1.120 was substantially similar to House Bill 4538, Senate Bill 1213, and House Bill 5407, and sought the same result: forcing schools to ban transgender students from restrooms and other facilities consistent with their gender identities.

31.    While introducing the amendment on the floor of the South Carolina state senate and explaining its purpose, Senator Wes Climer echoed Representative Cromer's earlier statements about House Bill 4538. Senator Climer stated, "The amendment before us here stipulates in school settings that a boy will use the boys' bathroom, the boys' locker room, the boys' changing room. That a girl will use the girls' bathroom, the girls' locker room, the girls' changing room."

32.    Senator Climer then referenced a story he had heard about an unidentified transgender girl—whom the State Senator referred to as "an 18-year-old man"—using the girls' restrooms at a South Carolina high school. Senator Climer concluded his remarks by saying that Proviso 1.120 would "rectify that very obvious problem."

33.    At no point in its consideration of Proviso 1.120, or any of its predecessor bills, did the South Carolina House or Senate present or receive evidence that transgender students' use of restrooms consistent with their gender identities presented any threat to other students.

34.    From its introduction, South Carolina state legislators understood that Proviso 1.120 directly flouted federal law. In an interview published by the South Carolina Daily Gazette on April 25, 2024, Senator Climer acknowledged that, in light of *Grimm*, Proviso 1.120 would likely face a legal challenge, and a lower court would probably rule against the state. Senator Climer expressed his hope, however, that the U.S. Supreme Court would agree to hear that case should it arise.

35.    Legislators opposing Proviso 1.120 highlighted its direct conflict with *Grimm* for their colleagues. For example, in a statement made on the senate floor, Senator Tameika Isaac

Devine explained, "We know that this amendment will be a violation of constitutional law. We could be sued; the state could be sued. . . . This will clearly subject our state to legal action. We are willfully wasting taxpayer dollars to defend against something that will be found unconstitutional." Senator Devine explicitly discussed *Grimm*. In doing so, Senator Devine ensured that her fellow state legislators knew, if they did not already, that the Fourth Circuit had already held prohibitions on transgender students using restrooms that correspond to their gender identities— like the one proposed in Proviso 1.120—to be unlawful and unconstitutional.

36.    Senator Deon T. Tedder, also speaking from the senate floor, echoed Senator Devine's sentiments about the illegality of Proviso 1.120 and expressed concern that the provision discriminated against students "that may have transitioned and identify as another sex." In response, Senator Devine again referenced the Fourth Circuit's holding in *Grimm*, explaining that the court had found a similar restroom policy in that case to be discriminatory and therefore unconstitutional.

37.    Senator Tedder highlighted the difficulty that this proviso would create for school districts across South Carolina. He remarked, "My concern is it really puts the school in a bind. . . . Now the school has to decide what they're going to do. Do we violate the Constitution, or do we risk losing funds?"

38.    Senator Tedder also noted that, "If [a] person was born a male and has transitioned, and is no longer physically a male, by voting for this [proviso] we'd essentially be sending a female into the males' locker room."

39.    Nonetheless, on June 26, 2024, the South Carolina House and Senate each voted to approve the budget appropriations bill, including Proviso 1.120. Governor Henry McMaster signed

the bill into law shortly thereafter. Proviso 1.120 took effect on July 1, 2024, the start of South Carolina's new fiscal year.

40.    The South Carolina Department of Education has made clear that it intends to vigorously enforce Proviso 1.120 by withholding state funding from school districts that do not comply.

41.    On July 23, 2024, Deputy State Superintendent John E. Tyler circulated a memorandum to district superintendents that provided "guidance" on Proviso 1.120. In this memorandum, Deputy Superintendent Tyler—writing on behalf of the state Department of Education—specified that "the Proviso under no circumstance permits a student [to] use a restroom other than that designated by biological sex at birth." The memorandum then instructed school districts to update their policies to comport with Proviso 1.120. The memorandum also noted that the proviso "requires" the state Department of Education "to withhold 25% of state funds" from school districts that fail to do so.

42.    On July 31, 2024, Deputy Superintendent Tyler sent school districts a second memorandum discussing Proviso 1.120. That memorandum again threatened to withhold state funding from schools that permitted transgender students to use restrooms consistent with their gender identities.

43.    Then again, on August 27, 2024, Deputy Superintendent Tyler sent school districts yet another memorandum discussing Proviso 1.120 and reiterating its threat to withhold state funding from noncompliant schools. The memorandum informed school districts that the State Department of Education "stands ready to enforce this proviso where noncompliance by passage of a conflicting policy or inconsistent implementation occurs."

44.    Proviso 1.120 is just one piece of a wider discriminatory legislative agenda targeting transgender persons in South Carolina. During the most recent legislative session, the Senate and House collectively introduced over twenty additional bills targeting transgender people. *See, e.g.*, H. 3197, 125th Gen. Assemb. (S.C. 2023); H. 3304, 125th Gen. Assemb. (S.C. 2023); H. 3466, 125th Gen. Assemb. (S.C. 2023); H. 3485, 125th Gen. Assemb. (S.C. 2023); H. 3551, 125th Gen. Assemb. (S.C. 2023); H. 3616, 125th Gen. Assemb. (S.C. 2024); H. 3728, 125th Gen. Assemb. (S.C. 2023); H. 3730, 125th Gen. Assemb. (S.C. 2023); H. 3771, 125th Gen. Assemb. (S.C. 2023); H. 3827, 125th Gen. Assemb. (S.C. 2023); H. 4535, 125th Gen. Assemb. (S.C. 2024); H. 4619, 125th Gen. Assemb. (S.C. 2024); H. 4624, 125th Gen. Assemb. (S.C. 2024); H. 4663, 125th Gen. Assemb. (S.C. 2023); H. 4707, 125th Gen. Assemb. (S.C. 2024); S. 234, 125th Gen. Assemb. (S.C. 2023); S. 243, 125th Gen. Assemb. (S.C. 2023); S. 274, 125th Gen. Assemb. (S.C. 2023); S. 276, 125th Gen. Assemb. (S.C. 2023); S. 364, 125th Gen. Assemb. (S.C. 2023); S. 623, 125th Gen. Assemb. (S.C. 2023); S. 624, 125th Gen. Assemb. (S.C. 2023); S. 627, 125th Gen. Assemb. (S.C. 2023); S. 743, 125th Gen. Assemb. (S.C. 2023); S. 833, 125th Gen. Assemb. (S.C. 2023).

### JOHN DOE

45.    John Doe is a thirteen-year-old student living in Berkeley County, South Carolina with his parents, Jim and Jane Doe.

46.    John is transgender. Although he was assigned female at birth, he is a boy and his gender identity is male. He now lives consistently with his male gender identity in all aspects of his life.

47.    John has always known he was a boy. Since he was a child, he has chosen to dress and otherwise present as a boy. Often, other people would assume he was a boy because of his

appearance. When he was around nine or ten years old, John asked his parents to stop correcting people who assumed he was a boy. A couple years later, he told them he was transgender.

48.     John first enrolled in Berkeley County School District as a kindergartener. Since then, he has been a student in the School District for all but two years. He enrolled in the School District's Cane Bay Middle School ("Cane Bay") as a sixth grader in 2022.

49.     John first started telling trusted teachers that he was transgender in sixth grade, and he has been open at school about his identity since seventh grade.

50.     John started eighth grade at Cane Bay in August 2024.

51.     This fall semester, while at Cane Bay, John used boys' restrooms, which are consistent with his gender identity.

52.     No students raised objections to John using the boys' restrooms.

53.     However, teachers—who do not use student restrooms—reported to the school's administrators that John was using the boys' restrooms.

54.     On or around August 27, 2024, Kamelio Johnson, an assistant principal at Cane Bay, told John that he would need to use the girls' restrooms. He told John that he could also use the single occupancy restroom in the nurse's office.

55.     John explained that it would be very upsetting for him to use the girls' restroom, which is inconsistent with his male gender identity, and that other students would likely feel uncomfortable as well, since he is and looks like a boy. Further, he explained that using the nurse's restroom would single him out and put a target on his back for harassment.

56.     The nurse's restroom was also farther away from John's classrooms than the boys' restrooms, such that use of that restroom would have cost John class time.

57.    John also knew that when he had previously used girls' restrooms, he confused his female classmates because he has looked like the boy that he is since even before he came out as transgender. For example, in fifth grade—before John came out as transgender, and while he was attending another school within the School District—female classmates were so confused by John's presence in the girls' restroom, given his masculine appearance, that his school principal had to intervene and tell the girls that John was allowed to use the girls' facility.

58.    On or around August 27, 2024, after telling John he would need to use the girls' restrooms, Assistant Principal Johnson spoke on the phone with Jim Doe, John's dad. Assistant Principal Johnson told Mr. Doe that John would need to use the girls' restrooms "for everyone's protection." Mr. Doe told Assistant Principal Johnson that he would support John in using boys' restrooms. He said he hoped that Cane Bay administrators would be his allies.

59.    After those conversations, John continued to use the boys' restrooms at school.

60.    Later in August or in early September, Mr. Doe, John, and Assistant Principal Johnson met at Cane Bay. Citing John's use of the boys' restrooms, Assistant Principal Johnson announced that he was going to suspend John for a day.

61.    When John asked what rule in the school handbook he was violating, Assistant Principal Johnson said he was being punished for refusing to obey his direction to not use the boys' restrooms. Assistant Principal Johnson acknowledged that the school had no written policy prohibiting John from using the boys' restrooms. He said vaguely, when pressed, that "people at the district office" had "communicated to" him that transgender students cannot use restrooms that correspond to their gender identities.

62.    Assistant Principal Johnson also acknowledged that no students had complained about John's use of the boys' restrooms, nor had anyone else who uses the boys' restrooms.

63.    After further discussion, the Cane Bay principal, Carol Beckmann-Bartlett, joined the meeting. She explained that the school was "dealing with . . . a state law," which she also referred to as "a proviso"—a reference to Proviso 1.120. She also explained that, over the summer, the School District had adopted a policy that had the effect of forbidding John from using the boys' restrooms.

64.    Principal Beckmann-Bartlett repeatedly told John that she did not have any personal objection to him using the boys' restrooms and was not angry at him. But she stated that the school could not change the law and was expected to follow it. She repeatedly expressed that she and Assistant Principal Johnson were merely following a directive from the School District, which was in turn following the directive of state law.

65.    Principal Beckmann-Bartlett told John that if he continued to use the boys' restrooms after he returned from his suspension, his punishment would escalate, and he would risk expulsion.

66.    The next day, John served his suspension.

67.    After his suspension, the School District instructed teachers to closely monitor John's use of the restrooms. Teachers began, for the first time, leading their classes of middle school students to the restroom in lines to monitor who was using which restroom. On more than one occasion, a teacher yelled at John for trying to use a boy's restroom and prevented him from relieving himself. As a result, in those instances, John spent the rest of the school day feeling physically uncomfortable from a full bladder and having trouble focusing on his classes.

68.    The School District's monitoring of John's restroom usage, as required by Proviso 1.120, fueled harassment by John's peers. John had previously experienced some anti-transgender harassment by classmates. But the School District's monitoring of his restroom usage emboldened

14

the harassers. One student, for example, taunted John because he was "supposed to use the girls' restrooms," and threatened to physically fight John.

69.    John missed multiple additional days of school because he was so upset by the harassment and invasive monitoring of his restroom use that he faced at Cane Bay.

70.    In September 2024, John's parents decided to withdraw John from Cane Bay. Their reason for doing so was the school's refusal to permit John to use the boys' restrooms, combined with the gender-based peer harassment he faced at the school.

71.    Since October 14, 2024, John has been participating in an online education program run by the School District. John does not like the online program. It offers fewer educational and social opportunities than Cane Bay, since it includes limited live instruction and John studies at home alone. John also finds the online platform difficult to use. He is now disengaged from his studies, and his dad worries he may fail his online classes, even though John has previously done well in school.

72.    If Cane Bay permitted John to use restrooms that correspond with his gender identity, John would like to re-enroll, and his parents would support his decision.

### ALLIANCE FOR FULL ACCEPTANCE

73.    The Alliance for Full Acceptance ("AFFA") is a nonprofit organization that advocates for lesbian, gay, bisexual, transgender, and queer (LGBTQ+) people of all ages in South Carolina. AFFA was founded in 1998 and is based in North Charleston.

74.    Among other activities, AFFA advocates for laws that protect LGBTQ+ South Carolinians, and against laws that will hurt them.

75.    Last session, AFFA advocated against Proviso 1.120 and its predecessor bills, which it knew would harm transgender students and were illegal. As AFFA's executive director told a journalist in January 2024:

> Precedent has already been set in the courts on cases like this. The courts have said students have the right to use a restroom that they need to use. So, putting a bill like this into play is a waste of time. This is just a political issue and a way to win political points. The courts have been clear – trans students have the right to use the restroom they need to use.

76.    Through its advocacy and work with South Carolina families, AFFA has discovered that, since the start of the new school year, Proviso 1.120 has been hurting transgender children across the state, who now face increased discrimination, stigma, harassment, and fear at school. These students are having a harder time learning—exactly what they are at school to do.

77.    AFFA's understanding of Proviso 1.120's effects has been confirmed by allied local organizations that provide direct services to transgender youth in South Carolina. The leaders of those organizations have informed AFFA that transgender youth are suffering discrimination, harassment, and other harms because of Proviso 1.120.

**CLASS ACTION ALLEGATIONS**

78.    Plaintiff John Doe brings his claims as a class action for injunctive and declaratory relief under Federal Rule of Civil Procedure 23(b)(2).

79.    John requests that the court certify the following class under Rule 23(b)(2):

> All current and future transgender students who seek or will seek to use a single-sex restroom corresponding to their gender identities in a South Carolina public school (the "Class").

80.    The Class satisfies Rule 23(a)(1) because it is sufficiently numerous that joinder of all members is impracticable. There are thousands of transgender students in South Carolina public schools, and transgender students are a geographically dispersed, vulnerable group that face

significant obstacles to bringing lawsuits on their own. Moreover, because the Class is comprised of schoolchildren, the Class's composition will change over time as new students who are members of the Class enroll in South Carolina schools or inform their schools that they are transgender. Therefore, joinder of all members would not be practical.

81.    The Class satisfies Rule 23(a)(2) because there are questions of law and fact common to the proposed Class. The common questions of law and fact include: (a) whether Proviso 1.120's restroom provision, facially and as applied to members of the proposed Class, violates Title IX; (b) whether Proviso 1.120's restroom provision, facially and as applied to the proposed Class, violates the Equal Protection Clause because it discriminates based on sex without adequate justification; and (c) whether Proviso 1.120's restroom provision, facially and as applied to the proposed Class, violates the Equal Protection Clause because it discriminates based on gender identity without adequate justification.

82.    John satisfies Rule 23(a)(3) because his claims are typical of the claims of the proposed Class. John challenges Proviso 1.120 on grounds that apply equally to the Class. Like other Class members, John seeks to use a single-sex restroom in a South Carolina public school, and the requested declaratory and injunctive relief would allow him and the Class to do so.

83.    John satisfies Rule 23(a)(4) because he would fairly and adequately represent the Class. Because Proviso 1.120 and the Defendants' practices exclude him from public school facilities and discriminate against him based on sex and gender identity, he shares the Class's interest in obtaining an injunction and declaratory relief. He has retained counsel with experience

in civil rights and Class action litigation, and he is committed to vigorously representing the Class's interests.

84.    Finally, John satisfies Rule 23(b)(2) because Proviso 1.120 and the Defendants' practices apply generally to the Class, such that injunctive or corresponding declaratory relief is appropriate respecting the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.***
***Against the Institutional Defendants***

85.    Plaintiffs repeat and incorporate by reference all of the allegations set forth above.

86.    Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

87.    The prohibition on discrimination "on the basis of sex" contained in Title IX includes discrimination against an individual for being transgender and for not conforming to sex stereotypes.

88.    The Institutional Defendants are subject to Title IX's prohibitions on discrimination on the basis of sex in education programs and activities because they receive federal financial assistance or control an education program or activity that receives such assistance.

89.    The Institutional Defendants, by forbidding Plaintiff John Doe and the Class from using restrooms that correspond to their gender identities in South Carolina public schools, have denied Plaintiff John Doe and the Class the benefits of, excluded them from participation in, and subjected them to discrimination under education programs and activities on the basis of sex, in violation of Title IX.

90.    The Institutional Defendants' discriminatory conduct continues to injure Plaintiff John Doe and the Class, such that an injunction is warranted to avoid further irreparable harm.

**SECOND CAUSE OF ACTION**

**Violation of 42 U.S.C. § 1983 Based on Deprivation of Rights Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**
*Against the Individual Defendants*

91.    Plaintiffs repeat and incorporate by reference all of the allegations set forth above.

92.    Proviso 1.120's restroom provision, and the Individual Defendants' decision(s) or practice(s) to categorically deny transgender students access to sex-specific restrooms corresponding to their gender identity, and to require all transgender students to either use sex-specific restrooms conflicting with their gender identities or single-occupancy, gender-neutral restrooms, violate the Equal Protection Clause of the Fourteenth Amendment both facially and as applied to Plaintiff John Doe and the Class because they subject him and other transgender students to unjustified discrimination on the basis of sex and transgender status.

93.    The Individual Defendants' implementation and enforcement of Proviso 1.120, and their decision(s) or practice(s) to categorically deny transgender students access to sex-specific school restrooms corresponding to their gender identity, and to require all transgender students to either use sex-specific restrooms conflicting with their gender identities or single-occupancy, gender-neutral facilities, are not substantially related to any important governmental interest or rationally related to any legitimate governmental interest.

94.    The Individual Defendants' discriminatory conduct denies Plaintiff John Doe and the Class the equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution, for which the Individual Defendants are subject to suit under 42 U.S.C. § 1983.

95.    Plaintiff John Doe and the Class have been, and continue to be, injured by the Individual Defendants' discriminatory conduct.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)    certify a Plaintiff Class under Rule 23(b)(2) of the Federal Rules of Civil Procedure of all current and future transgender students who seek or will seek to use a single-sex restroom corresponding to their gender identities in a South Carolina public school (the "Class");

(b)    name Plaintiff John Doe as representative of the Class;

(c)    appoint Plaintiffs' undersigned attorneys at Wardenski P.C., Public Justice, and Milberg Coleman Bryson Phillips Grossman, PLLC, as class counsel for the Class;

(d)    enter a declaratory judgment that Proviso 1.120, and Defendants' discriminatory decisions or practices complained of herein, violate the rights of John Doe and the Class under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and their rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

(e)    issue preliminary and permanent injunctions restraining Defendants, their agents, employees, representatives, and successors, and any other person acting directly or indirectly in concert with them, from enforcing, adopting, implementing, or complying with the restroom-related provision of South Carolina Budget Proviso 1.120, H. 5100, Appropriation Bill 2024-2025, Part IB § 1.120 (Act No. 226, 2024 S.C. Acts) ("Proviso 1.120") by prohibiting transgender students from using sex-specific school restrooms consistent with their gender identities or by withholding funds from any school or school district because it has permitted transgender students to use sex-specific school restrooms consistent with their gender identities.

(e)     order all injunctive and equitable relief necessary to cure the adverse educational

effects of Defendants' discriminatory actions on John Doe and other Class members' education;

(f)     award Plaintiffs their reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

and

(g)     order such other relief as this Court deems just and equitable.

DATED: November 12, 2024                    Respectfully submitted,

                                            /s/ *Harper T. Segui*
                                            Harper T. Segui (Fed ID 10841, SC 77730)
                                            MILBERG COLEMAN BRYSON PHILLIPS
                                            GROSSMAN, PLLC
                                            825 Lowcountry Boulevard
                                            Mount Pleasant, SC 29464
                                            Phone: (919) 600-5000
                                            hsegui@milberg.com

                                            Joseph J. Wardenski*
                                            WARDENSKI P.C.
                                            134 West 29th Street, Suite 709
                                            New York, NY 10001
                                            Phone: (347) 913-3311
                                            joe@wardenskilaw.com

                                            Alexandra Z. Brodsky*
                                            Sean Ouellette*
                                            Adele P. Kimmel*
                                            PUBLIC JUSTICE
                                            1620 L Street NW
                                            Suite 630
                                            Washington, DC 20036
                                            Phone: (202) 797-8600
                                            abrodsky@publicjustice.net
                                            souellette@publicjustice.net
                                            akimmel@publicjustice.net

                                            * *Pro hac vice motions forthcoming*

                                            *Attorneys for Plaintiffs*